UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOSE M. RAFAEL,

                    Petitioner,

vs.                                  Case No.  2:10-cv-402-FtM-36DNF

SECRETARY,  FLORIDA  DEPARTMENT  OF
CORRECTIONS,

                    Respondents.[1]
_____

**OPINION AND ORDER**

**I. Status**

Petitioner Jose Rafael (hereinafter "Petitioner" or "Rafael")

initiated this action by filing a *pro se* Petition for Writ of

Habeas Corpus ("Petition," Doc. #1) pursuant to 28 U.S.C. § 2254

_____

[1]Rule 2(a) of the Rules Governing Section 2254 Cases in United
States District Courts (hereinafter the "Rules") provides that
applicants in "present custody" seeking habeas relief should name
"the state officer having custody of the applicant as respondent."
The Supreme Court has made clear that there "is generally only one
proper respondent to a given prisoner's habeas petition."
*Rumsfield v. Padilla*, 542 U.S. 426, 435 (2004).  This is "'the
person with the ability to produce the prisoner's body before the
habeas court.'"   *Id.* at 435-436.   When the petitioner is
incarcerated and challenges his present physical confinement "the
proper respondent is the warden of the facility where the prisoner
is being held, not the attorney general or some other remote
supervisory official." *Id.* at 436 (citations to other authorities
omitted).  Alternatively, the chief officer in charge of the state
penal institution is also recognized as the proper named
respondent.  Rule 2(a), *Sanders v. Bennet*, 148 F.2d 19 (D.C. Cir.
1945).  In Florida, the proper Respondent in this action is the
Secretary of the Florida Department of Corrections.  Thus, the
Florida Attorney General will be dismissed from this action.

and memorandum of law ("Memorandum," Doc. #2) on June 19, 2010.[2] The Petition challenges Petitioner's December 2, 2005 judgment of conviction for trafficking in heroin, 28 grams or more, which was entered in the Twentieth Judicial Circuit, Lee County, Florida (case number 04-001054CF).  Petition at 1.[3]

Respondent filed a Response to the Petition (Doc. #13, Response).  Respondent moves for summary judgment based upon Petitioner's failure to raise a federal constitutional issue, or failure to satisfy his burden under 28 U.S.C. § 2254(d) and (e). Respondent filed exhibits (Exhs. 1-31) in support of his Response, including the record on direct appeal (Exh. 1).  Petitioner filed a Reply (Doc. #14, Reply) to the Response and a supporting "points and authorities" (Doc. #15) on January 27, 2011.

On June 29, 2011, Petitioner filed a motion to expand the record and incorporated a motion for an evidentiary hearing. Pursuant to the Court's Order (Doc. #19, Motion), Respondent filed a Response (Doc. #21, Response) opposing the Motion on July 20,

---

[2]The Petition was filed in this Court on June 24, 2010; however, the Court applies the "mailbox rule" and deems a petition "filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009).

[3]The page numbers referenced within this Order, other than to the page number referenced in the Exhibits, are to the page of the identified document as it appears on the Court's case management electronic computer filing system.  Exhibits are available in paper format only.

2011.  Petitioner filed a Reply (Doc. #22), without first seeking leave from the Court.[4]  Prior to turning to the merits of the Petition, the Court will address Petitioner's motion to expand the record.

In the June 29 Motion, Petitioner requests that the Court expand the record to include a copy of the transcript from the trial court's pre-trial hearing held on February 24, 2005, a copy of which Petitioner does not attach to his Motion.  *See* Motion; docket history.  Petitioner submits that Respondent's exhibits do not include a copy of this *Brady* hearing.  *Id.* at 2.  Petitioner claims that the Court needs a copy of this transcript to review his claim discussed in his Reply.  *Id.*  Petitioner further requests that the Court hold an evidentiary hearing to determine the merits of his Petition.  *Id.*

Respondent opposes Petitioner's Motion in its entirety, noting that the Petition does not make any reference to the February 24, 2005 hearing.  Response at 1.  Instead, Respondent notes that Petitioner's ineffective assistance of appellate counsel claim based on the failure to raise the denial of the motion to suppress on direct appeal refers to testimony and evidence taken on March 10, 2005, November 30, 2005, and February 4, 2005.  Nowhere does

---

[4]Local Rule 3.01(c)(M.D. Fla. 2009) states that no party shall file a reply or further memorandum directed to the motion or response unless the Court grants leave.  Petitioner neither sought leave, nor did the Court grant him leave to file a Reply.  Accordingly, the Clerk of Court shall strike the Reply.

the Petition refer to testimony and evidence from the February 24, 2005 hearing. Further, Respondent submits that the transcript of the February 24, 2005 hearing was not included in the record of appeal. *Id.* at 1-2. Therefore, Respondent argues that Petitioner is barred from seeking to introduce new evidence that was not before the State court reviewing his claim. *Id.* at 2. Respondent further submits that Petitioner is not entitled to a federal evidentiary hearing. *Id.* The Court will deny Petitioner's Motion.

Rules 7(a) of the Rules Governing Section 2254 Cases concerns expansion of the record. Rule 7(a) states:

> If the petition is not dismissed, the judge may direct the parties to expand the record by submitting additional materials *relating to the petition*. The judge may require that these materials be authenticated.

*Id.* (emphasis added). Thus, if the District Court determines from the record that it cannot summarily rule on the Petition, then the Court may direct that the record be expanded.

To the extent that a petitioner seeks to supplement the record with new evidence, a petitioner must comply with the statutory requirements applicable to requests for an evidentiary hearing under 28 U.S.C. § 2254(e)(2)(A). *Ward v. Hall*, 592 F.3d 1144, 1162-63 (11th Cir. 2010). Thus, a petitioner must demonstrate either that his claim relies on a retroactive rule of constitutional law, or that the factual predicate of his claim could not have been discovered through the exercise of due diligence. *Id.*

-4-

Petitioner seeks to expand the record to include a copy of the transcript from the pre-trial hearing held on February 24, 2005 concerning a *Brady* violation, but the Petition does not raise a claim that relies on this record. Petitioner's claims include appellate counsel's ineffective assistance for failing to argue that the trial court erred in denying his motion to suppress and a due process violation stemming from the post-conviction court not allowing Petitioner to file an amended post-conviction motion. Thus, the February 24, 2005 hearing is unrelated to the grounds raised in the Petition and will not assist the court in ruling on these claims. Significantly, a copy of this part of the transcript was not before any of the post-conviction courts when reviewing Petitioner's claims for post-conviction relief. The Court has a copy of the pre-trial transcript of the motion to suppress hearing held on March 10, 2005. Exh. 3. Therefore, Petitioner's Motion to Expand the Record to include a copy of the February 25, 2005 pre-trial hearing is denied.

This Court has carefully reviewed the record and, for the reasons set forth below, concludes no evidentiary proceedings are required in this Court. *Schriro v. Landrigan*, 550 U.S. 465, 474, 127 S. Ct. 1933, 1939-40 (2007). Petitioner does not proffer any evidence that would require an evidentiary hearing, *Chandler v. McDonough*, 471 F.3d 1360 (11th Cir. 2006), and the Court finds that the pertinent facts of the case are fully developed in the record

before the Court.  *Schriro*, 550 U.S. at 474.  The Court now turns
to the merits of the Petition.

## II.  Procedural History

### Information and Trial[5]

On May 7, 2004, the State filed an Information charging
Petitioner and his co-defendant, German Gustavo Franco, with one
count of Trafficking in Heroin, 28 Grams or More.  Exh. 1, Vol. I
at 1-2.  On December 1, 2005, the case proceeded to trial before
Circuit Judge Frederick Hardt.  Petitioner was represented at trial
by private counsel, Rebecca M. Hodge and Michael Schneider.  The
jury returned a verdict finding Petitioner guilty as charged.  Exh.
1, Vol. 4 at 543.  On December 2, 2005, the court adjudicated
Petitioner guilty and sentenced him to twenty-five years in prison.
Exh. 1, Vol. 1 at 3-14.

### Motion to Suppress

Prior to trial, on January 19, 2005, Petitioner's attorney
filed a motion to suppress the drugs found based on an unlawful
search and seizure.  Exh. 2.  An evidentiary hearing was conducted
by the trial court on March 10, 2005.  Exh. 3.  After considering
the testimony of the witnesses and other evidence, the court took
the matter under advisement.  On April 7, 2005, the court issued a

---

[5]Petitioner does not dispute the Respondent's statement
regarding the procedural history, with the exception that
Petitioner disputes the facts surrounding the pre-trial motion to
suppress.  *See* Reply at 1.  Therefore, the Court incorporates
herein the Respondent's recitation of the procedural history.

written order denying Petitioner's motion to suppress.    Exh. 4.
The court concluded that the traffic officers had probable cause to
stop Petitioner's vehicle and that under all of the circumstances
the subsequent detention of Petitioner prior to the alert by the
drug dog was not unreasonable.    In addition, the court found that
the drugs would have been found under the inevitable discovery
doctrine.    *Id.*

**Direct Appeal**

Petitioner, through counsel, pursued a direct appeal raising
three issues: (1) the trial court erred in instructing the jury
that it could not consider the sentence given to Carlos Lopez, the
confidential informant; (2) the trial court erred in not conducting
a *Richardson* hearing as to the failure to disclose the results of
the fingerprint comparison; and (3) the trial court erred in not
granting appellant's motion for judgment of acquittal.    Exh. 5.
The State filed an answer brief.    Exh. 6.    On December 15, 2006,
the appellate court *per curiam* affirmed Petitioner's conviction and
sentence.    Exh. 7; *Rafael v. State*, 944 So. 2d 993 (Fla. 2d DCA
2006)[table].    The mandate was issued on January 8, 2007.

**Rule 3.850 Motions**

On January 8, 2008, Petitioner filed a *pro se* motion for post-
conviction relief pursuant to Rule 3.850.    Exh. 9.[6]    Petitioner

---

[6]Exhibit 9 is a copy of the docket sheet showing that
Petitioner filed the Motion.  A copy of the Motion is located at
(continued...)

raised one claim of ineffective assistance of trial counsel stemming from counsel's failure to allege a discovery violation and for not attempting to obtain missing discovery items that were critical to the defense.

On January 30, 2008, the post-conviction court entered an order dismissing Petitioner's Rule 3.850 motion on the basis that Petitioner failed to allege any supporting facts to specify how Petitioner was prejudiced or how the outcome would have been different, as required by the two-prong test of *Strickland v. Washington*. Exh. 10.

On February 20, 2008, Petitioner's attorney filed a photocopy of the original Rule 3.850 Motion, with a memorandum in support. Exh. 11. On February 24, 2008,[7] the trial court issued an order denying the duplicate motion as successive. Exh. 12. Petitioner appealed the orders. Different appellate case numbers were assigned, but the cases progressed together. Exh. 14. On September 24, 2008, the appellate court *per curiam* affirmed the trial court's February 24, 2008 order of denial. Exh. 15; *Rafeal v. State*, 993 So. 2d 527 (Fla. 2d DCA 2008)[table]. Petitioner

---

[6](...continued)
Exhibit 11. *See also* Exh. 12 (stating Exh. 11 is a photocopy of the original).

[7]The circuit judge signed the order on February 4, 2008. Respondent contends the date is a clerical error and the order was really entered on February 24, 2008. Response at 4, fn. 3. For purposes of this Order, the date the order was issued is not dispositive.

filed a motion for rehearing, which the appellate court denied on October 21, 2008. Exh. 16, Exh. 17.  The court issued mandate on November 7, 2008.  Exh. 18.

### Petition Alleging Ineffective Assistance of Appellate Counsel

On July 24, 2008, while Petitioner's Rule 3.850 Motion was pending, Petitioner filed a *pro se* petition for writ of habeas corpus alleging ineffective assistance of appellate counsel.  Exh. 19.  The sole claim raised in the petition was that appellate counsel rendered ineffective assistance when he failed to brief the issue that the trial court erred in failing to suppress the narcotics discovered during the search of Petitioner's vehicle. Petitioner contended that law enforcement officers fabricated an excuse to effect the stop and search of his vehicle.  *Id.*

On August 12, 2008, in case number 2D08-3721, the appellate court filed an order denying the petition for writ of habeas corpus without discussion.  Exh. 12; *Rafael v. State*, 989 So. 2d 1193 (Fla. 2d DCA 2008)[table].   Petitioner filed a motion for rehearing.  Exh. 21.  The appellate court denied rehearing on September 16, 2008.  Exh. 22.

### Third Rule 3.850 Motion

On November 17, 2008, Petitioner, proceeding *pro se*, filed a third Rule 3.850 Motion.  Exh. 23.  Petitioner alleged twelve claims of ineffective assistance of trial counsel.  Pursuant to the trial court's order to show cause, the State filed a response to

Petitioner's Rule 3.850 Motion with attachments, arguing that the grounds were successive or constituted an abuse of the judicial process under Rule 3.850(f) and should be denied. Exh. 24. Petitioner filed a reply to the State's Response. Exh. 25.

On September 1, 2009, the post-conviction court entered an order denying, as procedurally-barred, Petitioner's third Rule 3.850 Motion. Exh. 26. The post-conviction court agreed with the State that one ground (Ground 7) was successive, and the remaining eleven grounds were an abuse of procedure. The post-conviction court also stated in a footnote, that contrary to Petitioner's contentions that the post-conviction court did not give him an opportunity to amend his original motion pursuant to *Spera v. State*, 971 So. 2d 754 (Fla. 2007), Petitioner filed a subsequent motion in an attempt to cure the deficiencies to no avail. Exh. 26 at 1, fn. 1.

Petitioner appealed the order denying relief. Exh. 27. Petitioner filed a *pro se* initial brief, claiming the trial court erred under state law by denying his post-conviction motions without leave to amend. Exh. 28. The State was not required to file a brief in response. Exh. 29.

On March 3, 2010, in Case Number 2D09-4604, the appellate court *per curiam* affirmed the post-conviction court's order denying Petitioner's third Rule 3.850 Motion. Exh. 30, *Rafael v. State*, 29

So. 3d 303 (Fla. 2d DCA 2010)[table].  The mandate issued on March

29, 2010.  Exh. 31.

### III.  Applicable § 2254 Law

Petitioner filed his timely[8] Petition after April 24, 1996,

the effective date of the Antiterrorism and Effective Death Penalty

Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996).

Consequently, post-AEDPA law governs this action.  *Abdul-Kabir v.*

*Quarterman*, 550 U.S. 233, 246 (2007);  *Penry v. Johnson*, 532 U.S.

782, 792 (2001); *Davis v. Jones*, 506 F.3d 1325, 1331, n.9 (11th

Cir. 2007).  Under AEDPA, the standard of review "is 'greatly

circumscribed and is highly deferential to the state courts.'

*Crawford v. Head*, 311 F.3d 1288, 1295 (11th Cir. 2002)." *Stewart*

*v. Sec'y Dep't of Corr.*, 476 F.3d 1193, 1208 (11th Cir. 2007).  *See*

*also Parker v. Sec'y Dep't of Corr.*, 331 F.3d 764 (11th Cir. 2003).

AEDPA altered the federal court's role in reviewing state prisoner

---

[8]Respondent concedes that, if the court applies the mail box
rule to Petitioner's initial Rule 3.850 Motion, then the Petition
is timely filed within the one-year federal limitations period set
forth in 28 U.S.C. Section 2244(d).  Response at 8, fn. 5.  The
Court gives a petitioner the benefit of the state's mailbox rule
with respect to his state court filings when calculating the one-
year limitations period under 28 U.S.C. § 2244(d).  Under Florida's
inmate "mailbox rule," Florida courts "will presume that a legal
document submitted by an inmate is timely filed if it contains a
certificate of service showing that the pleading was placed in the
hands of prison or jail officials for mailing on a particular date,
if . . . the pleading would be timely filed if it had been received
and file-stamped by the Court on that particular date." *Thompson*
*v. State*, 761 So. 2d 324, 326 (Fla. 2000).  Petitioner's initial
Rule 3.850 is entitled to the benefit of Florida's mail box rule.
Therefore, the instant Petition is timely filed.

applications in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

## A.   Federal Question

A federal court may only entertain an application for a writ of habeas corpus from a state prisoner who claims his custody violates the "Constitution or the laws or treaties of the United States."   28 U.S.C. § 2254(a).   Questions of state law are generally insufficient to warrant review or relief by a federal court under § 2254.   *Estelle v. McGuire*, 502 U.S. 62, 68 (1991); *Carrizales v. Wainwright*, 699 F.2d 1053, 1055 (11th Cir. 1983); *Cabberiza v. Moore*, 217 F.3d 1329, 1333 (11th Cir. 2000).   A violation of a state rule of procedure, or of state law itself, is not a violation of the federal constitution.   *Wallace v. Turner*, 695 F.2d 545, 548 (11th Cir. 1982); *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1989).   "It is a fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters." *Herring v. Sec'y. Dep't of Corr.*, 397 F.3d 1338, 1355 (11th Cir. 2005)(internal quotations and citations omitted).

**B.   Exhaustion and Procedural Default**

A federal court may only review an issue under § 2254 if petitioner first afforded the state courts an adequate opportunity to address that issue.   28 U.S.C. § 2254(b)(1)(A).

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.   To provide the State with the necessary opportunity, the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim.

*Baldwin v. Reese*, 541 U.S. 27, 29 (2004)(internal citations and quotations omitted).   This imposes a "total exhaustion" requirement in which all the federal issues must have first been presented to the state courts.   *Rhines v. Weber*, 544 U.S. 269, 274 (2005).   "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."   *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).   *See also Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.")(quoting *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001)); *Duncan v. Henry*, 513 U.S. 364, 365 (1995)(stating "exhaustion of state remedies requires that petitioners 'fairly present federal claims to the state courts in order to give the

State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights'").

"A claim is procedurally defaulted if it has not been exhausted in state court and would now be barred under state procedural rules." *Mize v. Hall*, 532 F.3d 1184, 1190 (11th Cir. 2008). Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, . . . . ." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). A procedural default for failing to exhaust state court remedies will only be excused in two narrow circumstances. First, a petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the asserted error. *House v. Bell*, 547 U.S. 518, 536-37 (2006); *Mize v. Hall*, 532 F.3d at 1190. Second, under exceptional circumstances, a petitioner may obtain federal habeas review of a procedurally defaulted claim, even without a showing of cause and prejudice, if such review is necessary to correct a fundamental miscarriage of justice. *House v. Bell,* 547 U.S. 518, 536 (2006); *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

## C.  Deference to State Court Decision

Even where a petitioner's claim raises a federal question, was exhausted, is not procedurally barred, and was adjudicated on the

merits in the state courts, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). *Cullen v. Pinholster*, ___ U.S. ___, 131 S. Ct. 1388, 1398 (2011). "This is a difficult to meet, and highly deferential standard for evaluating state-court rulings, which demands that the state-court decisions be given the benefit of the doubt." *Id.* (internal quotations and citations omitted). A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference. *Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008). Recently, the Supreme Court held that review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen*, 131 S. Ct. at 1398. Thus, the Court is limited to reviewing only the record that was before the state court at the time it rendered its order. *Id.*

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision. *Carey v. Musladin*, 549 U.S. 70, 74

(2006)(citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).  "[T]o be 'contrary to' clearly established federal law, the state court must either (1) apply a rule that contradicts the governing law set forth by Supreme Court case law, or (2) reach a different result from the Supreme Court when faced with materially indistinguishable facts."  *Ward*, 591 F.3d at 1155 (internal quotations and citation omitted); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).  A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown*, 544 U.S. at 134; *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), *cert. denied*, 534 U.S. 956 (2001); or, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."  *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 120 S. Ct. at 1520).  The "unreasonable application" inquiry "requires the state court decision to be more than incorrect or erroneous"; it must be "objectively unreasonable."  *Lockyer v. Andrade*, 538 U.S. 63, 75-77 (2003) (citation omitted); *Mitchell*, 540 U.S. at 17-18; *Ward*, 592 F.3d at 1155.

### D.  Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are reviewed under the standards established by 28 U.S.C. § 2254(d).  *Newland v. Hall*,

527 F.3d 1162, 1183 (11th Cir. 2008).  Post-AEDPA, the standard set
forth in *Strickland v. Washington*, 466 U.S. 668 (1984), remains
applicable to the claims of ineffective assistance of counsel
raised in this case.  *Newland*, 527 F.3d at 1184.  In *Strickland*,
the Supreme Court established a two-part test to determine whether
a convicted person is entitled to habeas relief on the grounds that
his or her counsel rendered ineffective assistance: (1) whether
counsel's representation was deficient, *i.e.*, "fell below an
objective standard of reasonableness" "under prevailing
professional norms," which requires a showing that "counsel made
errors so serious that counsel was not functioning as the 'counsel'
guaranteed the defendant by the Sixth Amendment"; and (2) whether
the deficient performance prejudiced the defendant, *i.e.*, there was
a reasonable probability that, but for counsel's unprofessional
errors, the result of the proceeding would have been different,
which "requires showing that counsel's errors were so serious as to
deprive the defendant of a fair trial, a trial whose result is
reliable." *Strickland*, 466 U.S. at 688; *see also Bobby Van Hook*,
558 U.S. ___, 130 S. Ct. 13, 16 (2009).  Thus, a habeas court's
review of a claim under the *Strickland* standard is "doubly
deferential." *Knowles v. Mirzayanze*, ___ U.S. ___, 129 S. Ct.
1411, 1420 (2009)(citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6
(2003)).  "A reasonable probability is a probability sufficient to
undermine confidence in the outcome." *Strickland*, at 694.  That
requires a "substantial," not just "conceivable," likelihood of a

different result.   *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 791 (2011).

States may "impose whatever specific rules . . . to ensure that criminal defendants are well represented," but "the Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices." *Bobby Van Hook*, 130 S. Ct. at 17 (internal quotations and citations omitted).   It is petitioner who bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable." *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006), *cert. denied sub nom. Jones v. Allen*, 127 S. Ct. 619 (2006).   A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690), applying a "highly deferential" level of judicial scrutiny.   *Id.*   A court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance."   *Strickland*, 466 U.S. at 689.   An attorney is not ineffective for failing to raise or preserve a meritless issue.   *Ladd v. Jones*, 864 F.2d 108, 109-10 (11th Cir.), *cert. denied sub nom. Ladd v. Burton*, 493 U.S. 842 (1989); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) ("a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client"). "To state the obvious: the trial lawyers, in every case, could have done something more or something different.   So,

omissions are inevitable.  But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000)(quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

"In considering the reasonableness of an attorney's decision not to raise a particular claim, [a court] must consider 'all the circumstances, applying a heavy measure of deference to counsel's judgments.'" *Eagle*, 279 F.3d 926, 940 (11th Cir. 2001) (quoting *Strickland*, 466 U.S. at 691).  "Thus, '[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at that time.'" *Id.* (quoting *Strickland*, 466 U.S. at 689).  The reasonableness of counsel's assistance is reviewed in light of both the facts and law that existed at the time of the challenged conduct. *Chateloin v. Singletary*, 89 F.3d 749, 753 (11th Cir. 1996).

### E. Ineffective Assistance of Appellate Counsel

The *Strickland* standard also governs claims asserting ineffective assistance of appellate counsel.  To determine whether Petitioner was prejudiced by his appellate attorney's failure to raise a particular issue, the Court "must decide whether the arguments the [Petitioner] alleges his counsel failed to raise were significant enough to have affected the outcome of his appeal."

*United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) (citing *Miller v. Dugger*, 858 F.2d 1536, 1538 (11th Cir. 1988)), *cert. denied*, 531 U.S. 1131 (2001). "If [a court] conclude[s] that the omitted claim would have had a reasonable probability of success, then counsel's performance was necessarily prejudicial because it affected the outcome of the appeal." *Eagle v. Linahan*, 279 F.3d 926, 943 (11th Cir. 2001)(citing *Cross v. United States*, 893 F.2d 1287, 1290 (11th Cir. 1990)).

### IV. Findings of Fact and Conclusions of Law

#### A. Ground One

Petitioner argues that appellate counsel was ineffective because counsel failed to argue that the trial court erred when it denied Petitioner's motion to suppress based on the facts presented in the State Court. In Response, Respondent asserts that appellate counsel cannot be deemed ineffective for failing to brief the suppression issue, which would have had little chance of success, if any, on direct appeal. Response at 23. Respondent refers the Court to the trial court's order of denial. *Id.* at 22.

Petitioner's claim of appellate counsel error was considered by the Florida appellate court in his petition for writ of habeas corpus. The Court finds that Ground One is exhausted to the extent raised in his State habeas petition below. *Duncan v. Henry*, 513 U.S. 364 at 365; Exh. 19 at 3. Further, the Court deems the appellate court's rejection of Petitioner's claims to be an

adjudication on the merits, which warrants deference by this Court. *Ferguson v. Culliver*, 527 F. 3d 1146.

The record shows that the trial court held a hearing on Petitioner's motion to suppress, after which the trial court denied Petitioner's motion, finding as follows:

> This matter is before the Court on Defendant's Motion to Suppress. The Defendant is charged with possession of heroin, 28 grams or more, a first degree felony.
>
> The Defendant was the subject of an undercover drug investigation conducted by the Collier County Sheriff's Office (CCSO) with a joint task force including the Drug Enforcement Administration (DEA) during a four-month period in late 2003 and early 2004. During this period, narcotics investigators had several undercover meetings with the Defendant during which the purchase of cocaine and heroin was discussed. The investigation ultimately culminated on April 7, 2004 with a planned purchase of 500 grams of heroin from the Defendant by a confidential informant (CI) for $38,000.00.
>
> The narcotics investigators had the Defendant under surveillance and were prepared to arrest the Defendant had the drug deal been consummated. However, the Defendant and the CI never reached an agreement as to the location for the drug buy. The CI and the investigators wanted the deal to take place in public at the Baymont Inn while the Defendant wanted the deal to be done at his residence. The CI was wired for sound and the Defendant came to the Baymont Inn to tell the CI that he wanted to change the location of the buy to his apartment. The CI felt at risk and when the CI told the Defendant he would not go to his apartment, the deal was off.
>
> The Defendant then told the CI that he had to take the heroin back to Miami and he warned the CI that nothing should interfere with his taking the heroin back to Miami. This conversation was in Spanish and was translated to English for the investigators in real time.
>
> The Defendant's residence and vehicle were under surveillance. Subsequently that evening the Defendant was

observed leaving his apartment in Golden Gate. He placed a package in the rear of his 1998 Lincoln Navigator and proceeded to drive east on 1-75 toward the east coast.

At this time, the narcotics investigators, suspecting the 500 grams of heroin to be in the Defendant's vehicle, contacted CCSO traffic patrol units on 1-75 that were conducting a speed enforcement detail and requested that they observe the Defendant's vehicle for any traffic violations or infractions, and further told the traffic officers that they suspected that heroin was in the Defendant's vehicle. They also advised that this vehicle had Florida tag registration "DV88K."

The narcotics investigators acknowledged that they needed probable cause to stop and search the Defendant's vehicle and they concluded that a traffic stop would be the best way to have probable cause. However, the investigators intended to stop and search the Defendant's vehicle if no traffic stop was made before the vehicle left Collier County.

The Defendant's vehicle proceeded east on 1-75, and when two traffic units (Corporal Salls and Corporal Beckos) made contact with the Defendant's vehicle near mile marker 90, the registration for "DV88K" was run through a computer search and was reported as not currently registered. The computer search by Corporal Salls occurred at 20:11:53 hours (8:11:53 pm civilian time). (See State's Ex. #4)

At approximately this same time, a speed check using radar clocked the Defendant's vehicle at a speed of 74 mph in a 70 mph zone. A traffic stop of the Defendant's vehicle was made by Corporal Salls and Corporal Beckos. At 20:1224 hours, Corporal Beckos ran a second computer search for "DV88K" which again reported the vehicle as not registered. Corporate Salls and Corporal Beckos were now concerned that the registration was fraudulent or that the vehicles was possibly stolen.

Corporal Salls obtained the vehicle registration papers  from the Defendant and determined that the vehicle identification number on the vehicle matched the number on the registration papers. Corporal Sails then realized that the license regulation was not "DV88K", but rather "DV8BK" which was reported as a valid registration in the name of the Defendant.

-22-

Corporal Beckos then began to write a warning citation to the Defendant for the speeding violation. He could not complete writing the citation until the vehicle registration was verified.

While Corporal Beckos was still writing the citation, a canine unit (Corporal Epright and Sabre) arrived at the scene to conduct a narcotics "sniff" search of the outside perimeter of the Defendant's vehicle. Before this "sniff' search could proceed, Corporal Salls and Corporal Beckos removed the Defendant and the passenger (German Gustavo Franco) from the vehicle to a secure area. Sabre was a properly trained and certified drug-sniffing dog with an excellent record for reliable alerts. Sabre alerts for drugs in a passive manner by sitting down as opposed to scratching or pawing.

Sabre alerted for drugs at the right rear of the Defendant's vehicle.  The Defendant contends that the video tape (State's Ex. #1) of the "sniff" search shows that Corporal Epright caused a false alert by pulling Sabre's leash backward. After reviewing the videotape several times, the Court is satisfied that the alert was not fake.

After the alert, Corporal Salls conducted a search and discovered a bag containing a light brown substance. The Defendant was arrested and placed in handcuffs.  The substance was field tested as positive for heroin and weighed approximately 503 grams.

The video tape (State's Ex. #1) of the traffic stop shows the total elapsed time from the initial stop until the alert by Sabre was approximately 13 minutes.

Probable cause for traffic stop, detention and canine alert

The traffic stop was initiated because (1) the computer check of the vehicle registration for the Defendant's vehicle indicated that the vehicle was not currently registered; and (2) the Defendant's vehicle was clocked by radar at a speed of 74 mph in a 70 mph zone. These facts gave the traffic officers probable cause to stop the Defendant's vehicle.  The correct test to be applied to determine the validity of a traffic stop is whether the officer who initiated the stop had an objectively reasonable basis for making the stop. *Dobrin*

-23-

*v. Florida Dept. of Highway Safety and Motor Vehicles*,
874 So. 2d 1171, 1174 (Fla. 2004) citing *Whren v. United States*, 517 U.S. 806, 116 S. Ct. 1769 (1996).  The
constitutional reasonableness of a traffic stop does not
depend on actual, subjective motivation of the officers
involved in the stop.  *Dobrin*, Supra.

In a case factually similar to the case at bar, the
Fourth District held in *Sanchez v. State*, 847 So. 2d 1043
(Fla. 4th DCA 2003) that even though the officers were
essentially "lying in wait" until the defendant committed
a traffic infraction, no matter how insignificant, the
officers' subjective reasons for the stop were not
significant.   In *Sanchez,* the officers received an
anonymous tip that the Defendant was transporting cocaine
from Miami and began a traffic surveillance.  A traffic
stop was initiated by the officers after Sanchez was
clocked at a speed of 78 mph in a 70 mph zone on I-95.
The Court upheld the legality of the traffic stop.

Once the stop for a traffic infraction is made, the
officers are justified in detaining the driver "only for
the time reasonably necessary to issue a citation or
warning."  *Sanchez*, at 1046.  In the case at bar, the
total elapsed time from the stop until the alert by the
drug dog was 13 minutes.  During this time, the traffic
officers walked up to the Defendant's vehicle, made
contact with the Defendant and the passenger and checked
the vehicle registration and the Defendant's driver
license. It took several minutes to verify the proper
vehicle registration.  When the canine unit arrived, the
traffic officers removed the Defendant and the passenger
to a secure area before the "sniff" search could proceed.
According to Corporal Epright, Corporal Beckos was still
writing the warning ticket when he arrived.  When the
officers are still in the process of investigating and
writing the ticket, the detention will not be rendered
unreasonable when other law enforcement personnel,
including a canine unit, converge on the scene.  In the
case of *Sands v. State*, 753 So. 2d 630, 632 (Fla. 5th DCA
2000), another case factually similar to the case at bar,
the Fifth District held that a detention after a traffic
stop was not unreasonable where only 15 minutes had
elapsed from the initial stop until the canine unit
arrived on the scene.  As in the case at bar, in *Sands*,
the officer was still writing the ticket when the canine
unit arrived.  The decision of the Second District in
case *Nulph v. State*, 838 So. 2d 1244 (Fla. 2d DCA 2003)

-24-

is distinguishable from the case at bar because in *Nulph* the officer admitted that he was waiting to start writing the ticket until the canine unit arrived.  In the case at bar, Corporal Beckos was not waiting and was in the process of writing the ticket when the canine unit arrived.

The use of a "sniff dog" such as Sabre in the case at bar does not constitute a search or seizure.  *Joseph v. State*, 588 So. 2d 1014, 1015 (Fla. 2d DCA 1991).  An alert by a properly trained police dog provides probable cause for a search.  *State v. Robinson*, 756 So. 2d 249 (Fla. 5th DCA 2000); *Joseph v. State*, Supra.

Accordingly, based upon the unrefuted testimony of the traffic officers, the Court finds that the traffic officers had probable cause to stop the Defendant's vehicle and that under all of the circumstances the subsequent detention of the Defendant prior to the alert by the "sniff" dog was not unreasonable.

<u>Inevitable Discovery Doctrine</u>

The State relies upon the inevitable discovery doctrine on the grounds that the heroin would have ultimately been discovered even if the traffic stop and subsequent detention was not legal.  The inevitable discovery doctrine is an exception to the "fruit of the poisonous tree" doctrine whereby evidence obtained as a result of unconstitutional police procedures is still admissible if it is shown that the evidence would ultimately have been discovered by other legal means. *State v. Duggins*, 691 So.2d 566,568 (Fla. 2nd DCA 1997); *Ruffin v. State*, 651 So.2d 206,207 (Fla. 2d DCA 1995). In the case at bar, the narcotics investigators testified that had the traffic officers not initiated a stop based upon a traffic infraction the Defendant's vehicle would nevertheless have been stopped and searched for the heroin before the vehicle reached the Broward County line on 1-75.  Although the narcotics investigators preferred to have a traffic stop and drug dog alert to establish probable cause for a search of the Defendant's vehicle, the investigators intended to stop and search the Defendant vehicle in any event before it left Collier County.  In the case of *Rosales v. State*, 878 5o.2d 497 (Fla. 3d DCA 2004), another case factually similar to the case at bar, a confidential informant (CI), controlled by two detectives, told the defendant that he wished to buy

a half kilo (500 grams) of cocaine. The defendant told the CI that he would need to obtain that amount of cocaine in Miami.  The next day, the defendant spoke to the Cl and informed him that he would have the half kilo later that day or the next. The CI advised the detectives of this conversation. The detectives then told traffic patrol officers on U.S. 1 to look for the defendant's vehicle as it traveled from Key Largo to Key West and to follow the defendant and initiate a traffic stop if the traffic officers observed a traffic violation.

As in the case at bar, in *Rosales* the detectives testified that if a traffic stop was not made [sic] the detectives intended to stop the defendant's vehicle before Key West and to search the vehicle.  In *Rosales* the Third District held that the inevitable discovery doctrine would apply if the detectives had probable cause to arrest the defendant prior to an illegal traffic stop. *Rosales*, at 501.

It is not possible to articulate precisely what "probable cause" or "reasonable suspicion" mean.  They are common sense, nontechnical conceptions that deal with "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians act." *League v. State*, 778 So. 2d 1086, 1087, citing *Ornelas v. United States*, 517 U.S. 690, 116 S. Ct. 1657 (1996). Probable cause to arrest or search exist when the totality of the facts and circumstances within the officer's knowledge sufficiently warrant a reasonable person to believe that, more likely than not, a crime had been committed. *See Curtis v. State*, 748 So. 2d 370, 374 (Fla. 4th DCA 2000).

In the case at bar, the reliability of the CI is not at issue because he was wired for sound and the investigators heard the CI's conversations with the Defendant which were translated from Spanish to English in real time.  In these conversations, the Defendant agreed to sell a half of kilo of heroin to the CI and said that he had brought the heroin from Miami and that the heroin was in his possession.  But for the disagreement regarding the location of the sale, the Defendant was ready to consummate the sale to the CI. Thereafter, the Defendant said he was taking the heroin that night back to Miami and he threatened the CI if anyone interfered with his return to Miami with the heroin. While under constant surveillance, the Defendant

was later observed placing a package in the rear of his vehicle and driving the vehicle east on I-75 toward Miami. Based upon these unrefuted facts, the Court finds that the narcotics investigators had sufficient reliable facts to form a reasonable belief that the Defendant was transporting heroin in his vehicle to Miami at the time of the traffic stop. Accordingly, the Court finds that there was probable cause to arrest the Defendant and search his vehicle before the traffic stop. The Defendant argues that the inevitable discovery doctrine does not apply because the Court would have to speculate as [sic] what the officers would have done had the traffic stop and subsequent search not occurred. *See State v. Duggins*, Supra at 568; *Ruffin v. State*, Supra at 208. Speculation may not play a part in the inevitable discovery doctrine as the focus must be on demonstrated verifiable facts. *Bowen v. State*, 685 So. 2d 942, 944 (Fla. 5th DCA 1996). However, even if the officers did not make any further investigation, they already possessed sufficient facts to establish probable cause. The Court finds that the inevitable discovery doctrine applies to this case.

In conclusion, the Court finds that there was probable cause to arrest the defendant and to search his vehicle for the heroin.

Because the heroin was lawfully seized from the Defendant's vehicle, the arrest of the Defendant for possession of heroin was also lawful, and any subsequent statements made by the Defendant to the passenger of his vehicle, which were recorded while the Defendant was under arrest in the patrol car, are also admissible.

Exh. 4.

Petitioner has a Sixth Amendment right to effective assistance of counsel both at trial and on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985); *Smith v. Robbins*, 528 U.S. 259, 278 (2000). In reviewing appellate counsel's performance, the Court "is mindful the Sixth Amendment does not require appellate advocates to raise every non-frivolous issue. Rather, an effective

attorney will weed out weaker arguments, even though they may have merit." *Philmore v. McNeil*, 575 F.3d 1251, 1265 (11th Cir. 2009)(internal quotations and citations omitted).

After conducting a pre-trial hearing at which officers testified and the trial court viewed the video tape of the stop, the trial court denied Petitioner's Motion and relied on a Florida case that cited *Whren v. United States*, 517 U.S. 806 (1996) to find that the police officers had probable cause to stop Petitioner's vehicle based on his speeding infraction. *See* Exh. 3 (transcript of motion to suppress hearing). Petitioner takes issue with the police officer's subjective intent for the stop.[9] Reply at 3. The United States Supreme Court has, however, dismissed "the idea that an ulterior motive might serve to strip the agents of their legal justification." *Whren*, 517 U.S. at 812.

In the alternative, the trial court denied Petitioner's Motion finding that the evidence obtained from the stop and search of

---

[9]In an abundance of caution, the Court notes that in Petitioner's Reply, he raises new claims for the first time concerning a *Brady* violation. Reply at 2-5. These claims are in fact new claims and are not additional details concerning another claim already raised. *Clisby* v. *Jones*, 960 F.2d 925, 936 (1992). Petitioner intermixes claims of this alleged *Brady* violation with a claim that the trial court erred in denying his motion to suppress. These claims are neither raised in the Petition, nor were they exhausted before the State courts. Therefore, the Court will not address these extraneous claims because they were not raised in the Petition. Even if the claims were raised in the Petition, the claims would now be procedurally-barred based on Petitioner's failure to exhaust the claims before the State court.

Petitioner's vehicle was admissible under the inevitable discovery doctrine because police had planned to stop the vehicle before the vehicle entered Broward County based on information obtained from a CI wearing a wire during an attempted drug deal with the Petitioner.  Although the trial court cited to only Florida cases in its order of denial, the  cases were not contrary to or an unreasonable application of federal law.  *See Nix v. Williams*, 467 U.S. 431 (1984)(setting forth inevitable discovery exception to the exclusionary rule).

Based upon the foregoing, the Court finds that the State appellate court's decision to deny Petitioner's State habeas petition was not contrary to clearly established federal law, and was not an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.  Significantly, Petitioner can neither show deficient performance, nor prejudice stemming from appellate counsel's failure to raise the claim regarding the denial of his motion to suppress.  Appellate counsel cannot be faulted for failing to raise a meritless issue.  *Philmore*, 575 F.3d at 1264-65.  Consequently, the Court finds that the State courts' decisions were neither contrary to nor an unreasonable application of federal precedent set forth by the United States Supreme Court.  Also, the decisions were not an unreasonable determination of the facts in light of the

evidence.   Thus, Ground One is denied in its entirety as without merit.

### B.  Ground Two

Petitioner argues that the post-conviction court's denial of his first post-conviction motion filed under Fla. R. Crim. P. 3.850 as "legally insufficient" violated his "due process rights under the Equal Protection Clause" because he was not permitted leave to amend, and his subsequent Rule 3.850 motions were denied as successive.  Petition at 4, 9.

In Response, Respondent submits that the claim does not raise an issue of federal constitutional magnitude.  Response at 24. Respondent states that the "federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution, not to correct errors of fact."  *Id.* at 25 (citing *Herrera v. Collins*, 506 U.S. 390, 400 (1993).  The Court agrees.

There is no federal constitutional requirement that the states provide a means of post-conviction review of state convictions, thus an infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas petition.  *Spradley v. Dugger,* 825 F.2d 1566, 1568 (11th Cir. 1986)(claim that post-conviction court erred by not holding a hearing or attaching portions of the record to the order failed to state a cognizable habeas corpus claim); *see* also Perry *v. McNeil*, Case No. 09-14200-CIV, 2009 WL 2252240 (S.D. Fla. July 28, 2009)

(citations omitted); *Mooris v. Cain*, 186 F.3d 581 (5th Cir. 1999)(noting that circuit precedent is abundantly clear that errors in state post-conviction proceedings will not, in and of themselves, entitle a petitioner to federal habeas relief); *Hassine v. Zimmerman*, 160 F.3d 941, 954 (3d Cir. 1998)(citing *Williams v. Missouri*, 640 F.2d 140, 143 (8th Cir.), *cert. denied*, 451 U.S. 990 (1981) (holding that state court's failure to conduct hearing on inmates post-conviction motion and failure to attach relevant portions of record did not undermine validity of inmate's conviction and, therefore, did not state basis for habeas relief); *Williams-Bey v. Trickey* 894 F.2d 314, 317 (8th Cir. 1990)(stating that "Section 2254 only authorizes federal courts to review the constitutionality of a state criminal conviction, not infirmaries in a state post-conviction proceeding"), *cert. denied*, 495 U.S. 936 (1990)). *But see Dickerson v. Walsh*, 750 F.2d 150, 152-53 (1st Cir. 1984). Thus, the Court finds that Petitioner's claim goes to issues unrelated to the cause of petitioner's detention and it does not state a basis for habeas relief.

Moreover, the record refutes Petitioner's contentions that the post-conviction court did not permit him to amend his initial Rule 3.850 Motion. The record shows that the post-conviction court, specifically Circuit Judge Hardt, reviewed Petitioner's second Rule 3.850 Motion, which included a copy of his initial Motion and a supporting memorandum of law filed by counsel. Judge Hardt's

denial of Petitioner's third Rule 3.850 Motion mentions the fact that the post-conviction court did review Petitioner's second Rule 3.850 Motion, which was denied as successive because it failed to correct the deficiencies of the original motion.  *See* Exh. 26 at 61.  Thus, Petitioner's assertions that he was not permitted leave to file an Amended Rule 3.850 Motion in violation of State law is not entirely accurate.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.   The Florida Attorney General is **dismissed** from this action.

2.   The Clerk of Court shall strike Petitioner's improperly filed reply (Doc. #22) to the Respondent's response in opposition to Petitioner's Motion to Expand the Record.

3.   Petitioner's motion to expand the record and for an evidentiary hearing (Doc. #19) is **DENIED.**

4.   The Petition for Writ of Habeas Corpus (Doc. #1) is **DENIED** for the reasons set forth herein.

5.   The Clerk of Court shall enter judgment accordingly; terminate any pending motions; and, close this file.

**CERTIFICATE OF APPEALABILITY AND**

**LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED**

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability.  A prisoner seeking to appeal a

district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA").  28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S.  180, 129 S. Ct. 1481, 1485 (2009).  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) or, that "the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003).  Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Fort Myers, Florida, on this 9th day of November, 2011.

Charlene Edwards Honeywell
United States District Judge

SA: alj

Copies: All Parties of Record

-33-